UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Index # 12-CV-3504 (PKC)

JUAN ESPINAL

                                   Plaintiff,    **FIRST AMENDED COMPLAINT**

-against-    **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK, DETECTIVE
MORGAN JONES (NYPD) TAX ID #914825,
SERGEANT CRYSTAL COLLINS (NYPD)
TAX ID #917065, "CAPTAIN ORTIZ" (NYPD)
TAX ID # 902895, AND NYPD POLICE OFFICERS
JOHN DOE #1-10 (THE NAME JOHN DOE BEING
FICTITIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN),

                                   Defendants,

------------------------------------------------------------------X

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF JEFFREY CHABROWE, P.C., respectfully shows to this Court and alleges:

**JURISDICTION**

1.     Jurisdiction is founded upon the existence of a Federal Question.

2.     This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United

1

  States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

3.  Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

4.  Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## PARTIES

5.  Plaintiff Juan Espinal, is a resident of New York, New York.

6.  Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7.  Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

8. Upon information and belief, at all times hereinafter mentioned, Defendants DETECTIVE JONES, SERGEANT CRYSTAL COLLINS, CAPTAIN ORTIZ and POLICE OFFICER(S) DOE #1-10 were employed by the Defendant, CITY OF NEW YORK, as members of its police department.

9. Upon information and belief, at all times hereinafter mentioned, all Defendant Police Officers, be they known or unknown, worked out of the Narcotic Boro Manhattan North and/or the 30th precinct, in the City of New York.

10. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE CHIEF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

11. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

12. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

13. On October 30, 2010 at approximately 4:40 pm, Plaintiff Juan Espinal was at his brother Elvin Espinal's apartment, located at 506 West 150th Street, Apartment 1A, along with his brother's two children, waiting for his mother to arrive for a planned family dinner.

14. Suddenly, there was a pounding at the apartment door, followed by someone yelling, in sum and substance, "There's a 911 emergency open up. 911 emergency, open the door!"

15. When Elvin Espinal opened the door, approximately eight police officers burst into the apartment.

16. The officers did not have a search warrant, were not given consent to enter, and no recognized exceptions to the warrant requirement were applicable.

17. One of the officers ripped Plaintiff Juan Espinal from the couch where he had been playing with his two year old niece, and forced him out the apartment door.

18. Once outside, Mr. Espinal was aggressively searched and the belongings from his pocket, including an IPhone, were thrown to the floor.

19. Mr. Espinal was then handcuffed as he repeatedly asked the two officers taking him into custody why he was being arrested and what was happening.

20. The arresting officers refused to tell Mr. Espinal why he was being arrested.

21. The arresting officers never read Mr. Espinal his Miranda rights.

22. After approximately one hour, Mr. Espinal's brother, who had not been handcuffed, exited the apartment with another officer.

23. Mr. Espinal heard that officer tell his brother, in sum and substance, "Show us where the stuff is at or we're going to call ACS (Administration for Children's Services) and we'll take your kids." The officer and Mr. Espinal's brother then went back into the apartment.

24. Shortly thereafter, Mr. Espinal's mother arrived at the apartment. Mr. Espinal's mother, who suffers from high blood pressure, saw the large number of police officers, including several in full SWAT gear, observed her eldest son in handcuffs, and fainted.

25. Mr. Espinal instinctively attempted to go to his mother's aid, but was forcibly restrained by a police officer.

26. Mr. Espinal began begging the officer to let him go so he could render aid to his mother, but the officer refused.

27. After several minutes, Mr. Espinal, who was still handcuffed, was finally allowed to assist his mother, as best he could, as none of the officers would help her.

28. Shortly thereafter, Mr. Espinal's brother was placed under arrest and taken to a van outside the apartment building.

29. As Plaintiff Juan Espinal was subsequently led to the same van, he continued questioning the arresting officer as to why he was being arrested. The officer laughed and replied, in sum and substance, "Shut up, don't act like this is your first time."

30. Plaintiff Espinal and his brother were held in the police van for over an hour while officers continued their search of the apartment.

31. At approximately 8:00 pm, over 3 hours after the incident began, Mr. Espinal and his brother were taken to the 30th Precinct in Manhattan.

32. At the 30th Precinct, Mr. Espinal was forced into an open gated cell to undergo a strip search conducted by two police officers.

33. During the strip search, Mr. Espinal was forced to stand completely naked with his hands up against the wall and his feet spread apart, all the while visible to passersby of every gender that walked by the cell or entered the surrounding area.

34. Mr. Espinal was also forced to manually pull his rectum open, squat, and cough, even though there was no indication that Mr. Espinal had any contraband on his person or inside his rectum.

35. Mr. Espinal was forced to endure the unnecessary and improperly performed strip search for approximately 20 minutes.

36. After the strip search, Mr. Espinal's brother Elvin was taken upstairs to give a written statement. Meanwhile, Mr. Espinal was informed by a female sergeant that once his brother gave a statement, the police would release Mr. Espinal from the precinct. This turned out to be completely false.

37. Although Mr. Espinal's brother provided police at the precinct with a statement affirming that Juan Espinal had absolutely nothing to do with anything illegal that may have been found at the apartment, and that Juan Espinal did not live at the apartment, officers continued to keep Juan Espinal wrongfully imprisoned.

38. Eventually, Mr. Espinal and his brother were taken to Central Booking. The entire time, Mr. Espinal was under the impression that he was going to be released based on the representation the female sergeant had made to him.

39. Nevertheless, Mr. Espinal was held at Central Booking from approximately 10:00 pm Saturday, October 30, 2010 until he was finally permitted to see a Judge at 2:00 am on Monday, November 1, 2010.

40. Mr. Espinal was arraigned early Monday morning and was given $30,000 bond/$10,000 cash bail, which he had no means of paying.

41. Mr. Espinal was then taken to the Manhattan Detention Center (hereinafter "MDC") where he was processed and forced to remain until his sister and a friend were able to bail him out at approximately 7:00 pm Monday, November 1, 2010.

42. While Mr. Espinal was in both Central Booking and MDC, he suffered a serious migraine headache and repeatedly asked for medication to help alleviate the pain. He was never given any medication and his migraine persisted the majority of his stay at MDC.

43. Because of his false arrest on October 30, 2010, Mr. Espinal, a contractor who owned his own business, missed an important meeting with an architect on the afternoon of October 30, 2010, which led to him losing a contract worth over $90,000.00.

44. Additionally, Mr. Espinal was forced to incur legal fees in the amount of $5,000 in order to defend himself against a charge of Criminal Possession of a Controlled Substance in the Fifth Degree, CPL 220.06(1).

45. As a direct result of this arrest, Mr. Espinal's relationship with his business partners was ruined, and his company eventually closed.

46. Mr. Espinal was forced to return to court for over 14 months to defend himself against this false and malicious charge.

47. The case was dismissed outright against both Mr. Espinal and his brother on December 20, 2011.

### AS AND FOR THE FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

—**False Arrest and Imprisonment**—

48. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 47.

49. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

50. The actions of Defendant Detective Jones and Officers Doe #1-10 detailed above violated Juan Espinal's rights under the United States Constitution. It was not objectively reasonable for the Defendant officers to arrest Mr. Espinal for anything on October 30, 2010.

51. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Espinal.

52. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

53. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Juan Espinal has been substantially injured.

### AS AND FOR THE SECOND CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Malicious Prosecution-**

54. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 53.

55. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

56. Juan Espinal was prosecuted, without probable cause, relative to a false and scurrilous charge stemming from his October 30, 2010 arrest.

57. The charge listed above resulted in a loss of liberty for Juan Espinal, as he was incarcerated for approximately 2.5 days as a result of these malicious and improper charges, and was forced to fight said charges over the course of 14 months, incurring substantial financial, psychological, and emotional costs as a result.

58. Mr. Espinal's criminal proceeding was unambiguously terminated in his favor.

59. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Espinal.

60. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

61. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Juan Espinal has been substantially injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -Illegal and Improperly Performed Strip Search-

62.	Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 61.

63.	The Fourth Amendment of the United States Constitution protects an arrestee's privacy interests in his person and prohibits bodily intrusions that are not justified under the circumstances, or which are made in an improper manner.

64.	Despite having no reason to believe Juan Espinal might have hidden contraband on his person or up his rectum, Mr. Espinal was forced to stand completely naked in an open gated cell, for 20 minutes, in full view to passersby of every gender, place his hands up against the wall and spread his feet apart while the officers inspected him, then manually pull his rectum open and cough to ensure maximum humiliation.

65.	Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Espinal.

66.	This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

67.	As a direct and proximate result of the unconstitutional acts described above, Plaintiff Juan Espinal has been substantially injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -Failure to Intercede-

68. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 67.

69. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

70. The actions of Defendant Detective Jones and Police Officers Doe #1-10 detailed above violated Juan Espinal's rights under the United States Constitution. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

71. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures, as well as the right to be free from restraints on bodily movement, were clearly established constitutional rights that a reasonable person would have known.

72. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Espinal.

73. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

74. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Juan Espinal has been substantially injured.

## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Conspiracy to Violate Plaintiffs' Civil Rights-**

75. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 74.

76. Defendant officers acting under color of state law in both their individual capacities and as agents for the City of New York, conspired together, reached a mutual understanding, and acted in concert to undertake a course of conduct violative of Plaintiffs' civil rights by:

   a. Agreeing to intentionally fabricate a legal justification for the unauthorized arrest of the Plaintiff.

   b. Agreeing to falsely arrest and imprison the Plaintiff as aforedescribed.

   c. Agreeing to contrive false charges against the Plaintiff, and to cause him to be maliciously prosecuted as aforedescribed.

   d. Agreeing to administer an unnecessary and improperly performed strip search.

   e. Agreeing to illegally withhold medical care from the Plaintiff

77. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

78. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Espinal.

79. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff Juan Espinal has been substantially injured.

### AS AND FOR THE SIXTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Denial of Medical Care-**

80. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 79.

81. Under the Due Process Clause of the Fourteenth Amendment, states must not deprive pre-trial detainees of needed medical care.

82. Mr. Espinal suffered from a serious migraine headache for the majority of his imprisonment at Central Booking and MDC.

83. Mr. Espinal communicated this condition to numerous officers and continually asked for medication to alleviate the pain; nevertheless, said officers reacted with deliberate indifference, denying Mr. Espinal access to such medication.

84. This conduct on the part of Defendants was a violation of 42 U.S.C. §1983, given that said actions were undertaken under color of state law.

85. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Espinal.

86. As a direct and proximate result of the unconstitutional acts described above, Mr. Espinal has been substantially injured.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**

**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law-**

87. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 86.

88. Upon information and belief, Defendant City of New York and Officers Doe #1-10 who were supervisors and final decision makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making warrantless searches of citizens absent reasonable suspicion and/or probable cause, not performing unnecessary and improperly administered strip searches, not administering proper medical care, and not making arrests without probable cause to believe a crime has been committed.

89. In the alternative, and upon information and belief, Defendants City of New York and Doe #1-10 instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice displayed by Narcotics Boro Manhattan North and the 30th Precinct officers, and/or

improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a willful indifference to the constitutional rights of the Plaintiff.

90.     Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers at the Narcotics Boro Manhattan North and the 30th Precinct.

91.     The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth Amendment of the United States Constitution.

92.     This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

93.     As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

94.     The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiff does not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

95.     The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Juan Espinal requests that this Honorable Court grant him the following relief:

A. A judgment in favor of the Plaintiff against Defendant officers for compensatory and punitive damages in an amount to be determined by a properly charged jury;

B. A judgment in favor of the Plaintiff against Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York      Respectfully Submitted By:
        November 16, 2012

_____
Andrew L. Hoffman, Esq.
SDNY Bar Code Number: AH2961
Of Counsel,
The Law Office of Jeffrey Chabrowe, P.C.
Attorney(s) for the Plaintiff
261 Madison Avenue, 12th FL
New York, New York 10016
T:      (212)736-3935
E:      ahoffman@andrewhoffmanlaw.com